# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | |
|---|---|
| TOWN OF WADESBORO;<br><br>              Plaintiff,<br><br>     v.<br><br>3M COMPANY, (f/k/a Minnesota Mining and Manufacturing Co.);<br>AGC CHEMICALS AMERICAS INC.;<br>AGC INC. F/K/A ASAHI GLASS CO.;<br>ARCHROMA U.S. INC.;<br>ARKEMA INC.;<br>BASF CORPORATION;<br>BUCKEYE FIRE EQUIPMENT COMPANY;<br>CHEMDESIGN PRODUCTS INC.;<br>CHEMGUARD, INC.;<br>CLARIANT CORPORATION,<br>CORTEVA, INC.,<br>DOE DEFENDANTS, JOHN 1-49;<br>DUPONT DE NEMOURS INC.,<br>DYNAX CORPORATION;<br>E.I. DU PONT NEMOURS & COMPANY;<br>ANSUL, INCORPORATED;<br>THE CHEMOURS COMPANY;<br>THE CHEMOURS COMPANY FC, LLC;<br>TYCO FIRE PRODUCTS LP,<br><br>              Defendants. | Civil Action No. 3:26-cv-251<br><br>**NOTICE OF REMOVAL** |

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless identified individually by full name), by undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1441(b), 1442(a)(1) and 1446, from the Superior Court for Anson County, North Carolina (the "Anson County Superior Court"), to the United States District Court for the Western District of North Carolina. As grounds for removal, Tyco alleges as follows

on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.     Plaintiff seeks to hold Tyco and certain other Defendants liable based on their alleged conduct in designing, manufacturing, marketing, distributing, and/or selling aqueous film-forming foam ("AFFF") that Plaintiff alleges caused property damage.

2.     Specifically, Plaintiff alleges that Defendants' AFFF contained per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), and that the use of AFFF exposed Plaintiff to these substances.

3.     At least some of the AFFF that gives rise to Plaintiff's claimed damage has been manufactured by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications ("MilSpec AFFF") and sold pursuant to contracts with the military.  Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product.  Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum.  *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016).  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed."  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

4. This action was filed on February 13, 2026 in the Anson County Superior Court, bearing Case No. 26CV000112-030 (Ex. A, Complaint). Venue is proper in this Court pursuant to 28 U.S.C. §§ 113 and 1441(a) because the Anson County Superior Court is located within the Western District of North Carolina.

5. Tyco Fire Products LP and Chemguard, Inc. were served the Complaint on February 26, 2026. This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b).

6. Tyco is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Hilbert v. McDonnell Douglas Corp.,* 529 F. Supp. 2d 187, 195 (D. Mass. 2008).

7. Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case and is also filing a copy with the Clerk of the Anson County Superior Court.

8. By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

9. Tyco reserves the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1).

10. Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing

3

defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) the defendant engaged in relevant conduct while "acting under" the United States, its agencies, or officers; (c) the lawsuit is one "for or relating to" the defendant's acts under color of federal office; and (d) the defendant raises a colorable federal defense. *Papp*, 842 F.3d at 812; *accord Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

11. Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441(a). Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp*, 842 F.3d at 812 (quotations omitted).

12. All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the Plaintiff's injuries have been caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF); *Ayo v. 3M Co.*, 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (same). The court overseeing the *In re Aqueous Film-Forming Foams Products*

4

*Liability Litigation* multi-district litigation (the "MDL") has also found on multiple occasions that removal under § 1442(a)(1) is proper where the notice of removal alleges that plaintiff's injuries are caused, at least in part, by MilSpec AFFF. *See, e.g.*, *In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2–3 (D.S.C. May 24, 2019) ("MDL Order 1"); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

### A. MilSpec AFFF

13. The United States Naval Research Laboratory developed AFFF in the 1960s to quickly suppress and extinguish liquid fuel fires, which are an ever-present risk in aviation and military environments. Following catastrophic fires aboard the aircraft carriers USS *Forrestal* in 1967 and USS *Enterprise* in 1969,[2] the United States military began using MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to put out fires, save lives, protect property, and train its personnel. Pursuant to requirements of the Federal Aviation Administration, MilSpec AFFF was also widely used to fight fires at larger civilian airports, known as "Part 139" airports. The Naval Research Laboratory has

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

14.     At all relevant times the manufacture and sale of MilSpec AFFF were governed by rigorous military specifications created and administered by Naval Sea Systems Command, a unit of the Department of Defense ("DoD").  The applicable specification, Mil-F-24385, was first promulgated in 1969, and was subsequently revised a number of times.[4]  All MilSpec AFFF products were required to be qualified for listing on the applicable Qualified Products List prior to military procurement.  Prior to such listing, a manufacturer's products were examined, tested, and approved to be in conformance with specification requirements.[5]  The MilSpec designated Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfied the MilSpec's requirements.  After a product was added to the Qualified Products List, "[c]riteria for retention of qualification [were] applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea Systems Command reserved the right to perform any of the quality assurance inspections set forth in the specification where such inspections were deemed necessary to ensure that supplies and services conformed to prescribed requirements.

---

[3]  U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5]  Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6] *Id.*

Case 3:26-cv-00251-SCR-DCK     Document 1     Filed 03/27/26     Page 6 of 19

15. From its inception until 2019, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS. This requirement was in force for all or most of the time period at issue in the Complaint. In 2019 the MilSpec removed the requirement of "fluorocarbon" surfactants, but the DoD acknowledged that no AFFF product could satisfy the stringent performance requirements of the MilSpec without the use of PFAS-containing surfactants.

16. MilSpec AFFF has been widely used at military bases and civilian airports and by civilian fire departments. All MilSpec AFFF is military equipment and must be manufactured and labeled in accordance with military specifications, regardless of whether the product is ultimately used in a military or civilian setting. Plaintiff's claimed injuries arise in part from the use of MilSpec AFFF. As the MDL Court has noted, AFFF manufacturers have consistently maintained that PFAS from MilSpec AFFF and other PFAS-containing products were inextricably linked, "a theory that, if credited, holds sufficient water to substantiate federal officer removal." Case Management Order No. 36 at 2, ECF No. 7891, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-MN-2873 (D.S.C. Aug. 22, 2025) (quotation omitted). "Accordingly and based on the MDL Court's knowledge and experience managing this MDL, the Court finds that there exists, at the very least, a plausible basis for alleging federal jurisdiction sufficient to satisfy [defendants'] initial burden on a notice of removal." *Id.*

17. Plaintiff's claims arise at least in part from the use of MilSpec AFFF (including MilSpec AFFF manufactured by Tyco) at the Gabreski Air National Guard Base. (*See* Compl. ¶¶ 7-19).

### B.    All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied.

#### 1.    The "Person" Requirement Is Satisfied.

18.    The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and corporation, respectively) meet the definition of "persons" under the statute.  For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships."  *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

#### 2.    The "Acting Under" Requirement Is Satisfied.

19.    The second requirement ("acting under" a federal officer) is satisfied when an entity has assisted or helped carry out, the duties or tasks of a federal officer.  *Papp*, 842 F.3d at 812. The phrase "acting under" is to be "liberally construed in favor of the entity seeking removal." *Sawyer*, 860 F.3d at 255 (quotations omitted). "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*."  *Id.* (emphasis in original).

20.    The requirement of "acting under" a federal officer is met here because the alleged PFAS exposure that is the focus of Plaintiff's claims stems in part from MilSpec AFFF, a vital product provided by Tyco that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137.  MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (quotation omitted)); *cf. Isaacson*, 517 F.3d at 137.  The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of

8

the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[7] Accordingly, the military long depended upon outside contractors like Tyco to develop and supply AFFF. *See Nessel*, 2021 WL 744683, at \*3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at \*8–9 (same); *see also* MDL Order 1, 2019 WL 2807266, at \*2 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5 (same); MDL Order 3, at 3–6 (same). If Tyco and other manufacturers had not provided MilSpec AFFF, the government would have had to manufacture and supply the product itself.

21.     In designing and manufacturing the MilSpec AFFF at issue, Tyco acted under the direction and control of one or more federal officers. Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[8]

### 3.     The "For or Relating to" Requirement Is Satisfied.

22.     The third requirement, that the lawsuit is one "for or relating to" the defendant's actions taken under color of federal office, is satisfied when there is a "connection or association" between the lawsuit and the defendant's actions under federal authority. *Papp*, 842 F.3d at 813.

---

[7] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

[8] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137.[9] Courts credit Defendants' theory of the case when determining whether a connection exists. *Isaacson*, 517 F.3d at 137. The required connection or association may arise from a defense to plaintiff's claims. *See Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiff cannot decide what defense Defendants might present").

23. Here, Plaintiff alleges that the use of PFAS in AFFF is the source of his injuries. Tyco contends that some of the AFFF giving rise to Plaintiff's claimed injuries was MilSpec AFFF, and that the use of PFAS in MilSpec AFFF was required by military specifications. As a result, Plaintiff's claims against Tyco are connected to its acts taken under color of federal office. *See Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, 2019 WL 2807266, at *3 (element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards."); MDL Order 2, at 5 (element satisfied where AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); MDL Order 3, at 5–6 (same).

### 4. The "Colorable Federal Defense" Requirement Is Satisfied.

24. The fourth requirement ("colorable federal defense") is satisfied by Tyco's assertion of the government contractor defense.

25. At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted,

---

[9] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)). Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

26. Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. Tyco has satisfied these elements for purposes of removal.

11

27.     The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling. Those specifications were "reasonably precise" in requiring the use of PFAS. As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family. Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification. In addition, the DoD purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *Ayo*, 2018 WL 4781145, at \*12 ("That the DoD knows of the alleged risks of [PFAS]-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

28.     With respect to the second requirement, Tyco's products appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See id.* at \*13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, 2019 WL 2807266, at \*3 (finding that

defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

29. Regarding the third requirement, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, the United States long understood that AFFF contained PFAS and could contain or break down into PFOS and/or PFOA; that AFFF constituents could migrate through the soil and potentially reach groundwater; and that it had been reported that this may raise environmental or human health issues.[10] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[11] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA.

---

[10] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

[11] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[12] Indeed, even today Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[13] If the government is already aware of the relevant product hazards, no warning by the manufacturer to the government is required. *See Ayo*, 2018 WL 4781145, at \*14; MDL Order 1, 2019 WL 2807266, at \*3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

30. At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at \*13.

---

[12] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[13] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

31. Tyco's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on Tyco for alleged injuries to Plaintiff that were caused in whole or in part by Tyco's compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

32. In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by Tyco and other MilSpec AFFF manufacturers presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."

33. To the extent that Plaintiff's injuries may have been caused by PFAS derived from any non-MilSpec AFFF, PFAS derived from MilSpec AFFF nevertheless is or was inseparably and indivisibly commingled with PFAS derived from non-MilSpec AFFF and contributed to any alleged injury that he has sustained. Thus, the government contractor defense is necessarily implicated regardless of the type of AFFF that Plaintiff may identify as the source of his alleged injuries.

WHEREFORE, Tyco hereby removes this action from the Superior Court for Anson County, North Carolina, to this Court.

Respectfully submitted this 27th day of March, 2026.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Alexandra M. Bradley*
Alexandra M. Bradley, N.C. Bar No. 54872
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800

15

Facsimile: (919) 329-3799
alex.bradley@nelsonmullins.com

*Counsel for Tyco Fire Products, LP and Chemguard, Inc.*

16

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 27th day of March, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

A copy of same was served upon counsel of record by <u>electronic mail and United States mail, first class, postage prepaid, as follows</u>:

| | |
|---|---|
| Garry Whitaker<br>Garry Whitaker Law, P.C.<br>One N. Marshall Street<br>Winson-Salem, NC 27101<br>garrywhitaker@garrywhitakerlaw.com | Scott Summy<br>Cary McDougal<br>Carla Pickrel<br>Jason Julius<br>Brett Land |
| Philip F. Cossich, Jr.<br>Brandon J. Taylor<br>Darren Sumich<br>David A. Parsiola<br>Christina M. Cossich<br>Andrew Cvitanovic<br>Luana N. Smith<br>**COSSICH, SUMMICH, PARSIOLA<br>& TAYLOR, LLC**<br>8397 Highway 23, Suite 100<br>Belle Chasse, LA 70037<br>pcossich@cossichlaw.com<br>btaylor@cossichlaw.com<br>ccossich@cossichlaw.com | **BARON & BUDD, P.C.**<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, Texas 75219<br>ssummy@baronbudd.com<br>cmcdougal@baronbudd.com<br>cburkepickrel@baronbudd.com<br>jjulius@baronbudd.com<br>bland@baronbudd.com |

*Counsel for Plaintiffs*

And by <u>United States mail, first class, postage prepaid</u> to:

| | |
|---|---|
| Daniel L. Ring<br>Tyler D. Alfermann<br>**MAYER BROWN LLP**<br>71 South Wacker Drive<br>Chicago, IL 60606<br>dring@mayerbrown.com<br>talfermann@mayerbrown.com<br>*Counsel for Defendant 3M Company* | Melanie Black Dubis<br>Charles Raynal<br>**PARKER POE ADAMS &<br>BERNSTEIN LLP**<br>301 Fayetteville Street, Suite 400<br>Raleigh, NC 27601<br>melaniedubis@parkerpoe.com<br>Charlesraynal@parkerpoe.com<br>*Counsel for Defendants Archroma U.S.<br>Inc. and Clariant Corporation* |

17

David R. Erickson
Brent Dwerlkotte
**SHOOK, HARDY & BACON LLP**
2555 Grand Blvd.
Kanasas City, MO 64108
derickson@shb.com
bdwerlkotte@shb.com
*Counsel for Defendants E.I. DuPont*
*de Nemours & Company, The*
*Chemours Company FC, LLC, and*
*The Chemours Company*

Kat Hacker
**BARTLIT BECK LLP**
1801 Wewatta, Suite 1200
Denver, CO 80202
kat.hacker@bartlitbeck.com
*Counsel for Defendants Corteva Inc*
*and DuPont de Nemours Inc.*

Peter Condron
**CROWELL & MORING**
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-259
pcondron@crowell.com
*Counsel for Defendant AGC Chemicals*
*Americas Inc. and AGC, Inc.*

Heidi Levine
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
Hlevine@sidley.com
*Counsel for Defendant Arkema Inc.*

John Wellschlager
**DLA PIPER LLP (US)**
Harbor East
650 S. Exeter Street
Baltimore, MD 21202-4576
John.wellschlager@dlapiper.com
*Counsel for Defendant BASF*
*Corporation*

Michael L. Carpenter
**GRAY LAYTON KERSH**
**SOLOMON FURR & SMITH, P.A.**
Post Office Box 2636
Gastonia, North Carolina 28053-2636
mcarpenter@gastonlegal.com
*Counsel for Defendant Buckeye Fire*
*Equipment Company*

Jonathan Blakley
**GORDON REES SCULLY**
**MANSUKHANI, LLP**
One North Wacker, Suite 1600
Chicago, IL 60606
jblakley@grsm.com
*Counsel for Defendant ChemDesign*
*Products Inc.*

Kirk G. Warner
Clifton L. Brinson
Addie K.S. Ries
**SMITH, ANDERSON, BLOUNT,**
**DORSETT,**
**MITCHELL & JERNIGAN, L.L.P**
Post Office Box 2611
Raleigh, North Carolina 27602-2611
kwarner@smithlaw.com
cbrinson@smithlaw.com
aries@smithlaw.com
*Counsel for Defendant Dynax*
*Corporation*

18

The Ansul Company
2698 Industrial Pkwy S
Marinette, WI 54143

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Alexandra M. Bradley*
Alexandra M. Bradley, N.C. Bar No. 54872
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
alex.bradley@nelsonmullins.com

*Counsel for Tyco Fire Products, LP and Chemguard, Inc.*

19